UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHELLE WATKINS,                    :
                                     :CIVIL ACTION NO. 3:11-CV-1635
          Plaintiff,                 :
                                     :(JUDGE CONABOY)
          v.                         :(Magistrate Judge Carlson)
                                     :
CAROLYN W. COLVIN, ACTING            :
COMMISSIONER OF SOCIAL SECURITY,[1]  :
                                     :
          Defendant.                 :
                                     :

---

**MEMORANDUM**

Here we consider an appeal from the Commissioner's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. (Doc. 1.) The matter was referred to Magistrate Judge Martin C. Carlson who issued a Report and Recommendation on March 21, 2013, recommending the Commissioner's decision be upheld. (Doc. 15 at 29.) For the reasons discussed below, we conclude this matter is properly remanded to the Commissioner for further consideration.

## I. Background

### A. Procedural Background

Plaintiff applied protectively for DIB and SSI on July 2,

---

[1] As noted by Defendant, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. (Doc. 17 at 1 n.1.) Substitution of Carolyn W. Colvin for Michael J. Astrue is appropriate pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g). (*Id.*)

2008.  (R. 51, 155-70.)  She reported that she had become disabled within the meaning of the Act on December 1, 2005.  (R. 165.) Plaintiff listed her impairments as "[s]everal herniated disks, arthritis, fibromyalgia, depression."  (R. 156.)  In a Notice of Disapproved Claim, the Social Security Administration stated Plaintiff did not qualify for benefits because she was not disabled under applicable rules.  (R. 94.)  Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. 116), and a hearing was held before ALJ David A. Gerard on January 25, 2010 (R. 64). Plaintiff, who was represented by counsel, appeared and testified at the hearing.  (R. 64-86.)  The ALJ found Plaintiff was not disabled under the Act and denied her application.  (R. 51-58.)  A timely appeal was taken to the Appeals Council, and on July 21, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the decision of the Commissioner.  (R. 1.)

On November 6, 2011, Plaintiff filed a Complaint with this Court objecting to the Commissioner's final decision and requesting remand to the Commissioner.  (Doc. 1.)  Defendant filed an answer on November 4, 2011.  (Doc. 7.)  Pursuant to Local Rules 83.40.4 and 83.40.5 Plaintiff filed her brief in support of her appeal of the denial of her claim on December 29, 2011 (Doc. 11) and Defendant filed her brief on February 1, 2012 (Doc. 12).  Plaintiff filed a reply brief on February 10, 2012. (Doc. 13.)  As noted

above, the matter was referred to Magistrate Judge Martin C. Carlson who issued a Report and Recommendation on March 21, 2013, recommending the Commissioner's decision be upheld. (Doc. 15 at 29.) Plaintiff filed objections to the Report and Recommendation on April 1, 2013. (Doc. 16.) Defendant filed a response to the objections on April 11, 2013. (Doc. 17.) Plaintiff has not filed a reply brief and the time for doing so has passed. Therefore, this matter is ripe for disposition.

## B. *Factual Background*

Plaintiff was born in July 28, 1971. (R. 169.) She graduated from high school, attended two years of college, and had training in medical transcription. (R. 189.) Her work background included jobs as a cleaner, kindergarten teacher, chiropractic assistant, data entry operator, office assistant, and secretary. (R. 185.) The job she had the longest was that of kindergarten teacher, a position she held from August of 1994 to May of 2001. (R. 185.) Her work record reflected consistent earnings from 1990 through the year she became disabled with the exception of 2002. (R. 172-179.)

As noted above, the impairments listed in Plaintiff's application were "[s]everal herniated disks, arthritis, fibromyalgia, depression." (R. 156.) She also alleges that she suffered from a chronic abdominal pain disorder following multiple abdominal surgeries. (Doc. 11 at 2.)

## 1. Chronic Abdominal Pain[2]

Plaintiff states that her chronic abdominal pain began after surgery for an ovarian cyst in 2005. (*Id.* (citing R. 261, 273).) Plaintiff had surgery in March 2006 for endometriosis, but she states this did not relieve her pain. (*Id.* at 3 (citing R. 312-16, 326-50, 353-56).) Plaintiff required hospital admission in February 2007 due to pelvic pain. (Doc. 11 at 3 (citing R. 365-68).) After reporting worsening pelvic pain to her physicians in April 2008, Plaintiff received additional evaluation and treatment and eventually saw Diana Wallace, M.D., in September of 2008. (Doc. 11 at 3 (citing R. 217-20, 232-33, 238-39, 241, 243, 247, 261, 264).)

Dr. Wallace performed a laparoscopy on September 18, 2008, and reported a postoperative diagnosis of extensive abdominopelvic adhesions. (R. 262.) At a September 24, 2008, visit, Dr. Wallace noted Plaintiff was doing well but, though improved, she still had left lower quadrant ("LLQ") pain. (R. 259.) Dr. Wallace further noted that this is the area where the largest cone of adhesions was located. (*Id.*) Plaintiff asked about a plan if the pelvic pain continued. (*Id.*) Dr. Wallace noted she would consider three possibilities: surgical referral, GI referral, and chronic (pelvic) pain clinic referral. (*Id.*)

---

[2] In setting out evidence related to specific impairments, we focus on the evidence of record referenced in the parties' briefs and the ALJ's Decision.

On September 30, 2008, Plaintiff reported to Dr. Wallace that she was "in great pain," mostly in the LLQ. (R. 259.) Dr. Wallace noted that Plaintiff said she was taking oxycontin and motrin, neither of which Dr. Wallce had prescribed). (*Id.*) Based on Plaintiff's reports, Dr. Wallace noted that she was inclined to refer Plaintiff to the pain clinic for chronic pain management. (*Id.*) Dr. Wallace further noted that Plaintiff's pain might be due to the adhesive disease she had, but other causes should be explored. (*Id.*)

Thomas Celello, M.D., conducted a consultative examination on November 7, 2008.[3] (R. 273.) In his physical examination of Plaintiff's abdomen, he noted there was tenderness on palpation along the course of the left colon with no masses or organomegaly detected, and active bowel sounds. (R. 275.) His assessment included a finding of "[c]hronic abdominal pain. Full etiology has yet to be elucidated." (*Id.*)

On January 4, 2010, Douglas Brenneman, D.O., Plaintiff's treating physician, reported that subjectively Plaintiff "presents with c/o Abdominal pain Cont with abdominal pain on the left side that is severe with activity. Lying down seems to help symptoms." (R. 381.) Objectively, he summarized his examination of the abdomen: "soft, non-distended, bowel sounds present, tender LLZ, no

---

[3] This is the only evidence cited by Defendant regarding Plaintiff's chronic pelvic pain in the Brief of Defendant. (Doc. 12 at 5.)

rebound, no guarding, no rigidity." (R. 381.)

In his analysis of Plaintiff's abdominal pain, the ALJ notes that "claimant presents with very limited medical findings." (R. 55.) Acknowledging that Plaintiff "eventually underwent laparoscopy and hysterectomy for her pain," specific evidence of record cited is a 2007 colonoscopy which was normal, 2008 hip and pelvic x-rays which were normal "with no signs of pelvic masses despite the claimant's ongoing complaints of pelvic pain," and an April 2008 examination where it was recorded that "she was noted to be in no acute distress and was told that her pain was of a questionable etiology. (R. 55 (citing Exhibits 1F and 11F).) The ALJ also, without citation, refers to an August 2008 report showing that "the claimant's CT angiogram and ultrasound of the abdomen were completely unremarkable, and that she had no edema of her lower extremities and a soft, obese abdomen with tenderness focally in the left lower quadrant to palpation with positive bowel sounds." (R. 55.) The ALJ cites Dr. Celello's November 2008 findings. (R. 55 (citing Ex. 6F).) He also cites Dr. Brenneman's January 4, 2010, progress note which shows that

> the claimant presented with ongoing abdominal pain on the left side but denied change in bowel habits, diarrhea, nausea, rectal bleeding, vomiting or weight loss, had no rebound, guarding or rigidity of the abdomen despite complaints of tenderness, normal extremity range of motion with no edema, and that her abdominal pain continued to be of an unknown etiology.

(R. 55 (citing Ex. 13F (R. 381)).)

6

## 2.   Fibromyalgia

Plaintiff identifies fibromyalgia as an additional physical impairment.  (Doc. 11 at 4 (citing R. 231, 238, 261, 275, 282, 312, 363, 365).)  Most of these citations refer to fibromyalgia as a "past medical history" condition and many include it in the "assessment" portion of the report or treatment notes.  (*See*, *e.g.*, R. 238, 275.)  In his November 7, 2008, consultative examination, Dr. Celello reports that "Ms. Watkins states that she was diagnosed as having fibromyalgia four to five years ago when she had complaints of diffuse joint pain and fatigue."  (R. 274.)  The Physical Residual Functional Capacity Assessment lists history of fibromyalgia as an alleged impairment and states that "[t]he medical evidence establishes medically determinable impairments of Chronic Abdominal Pain, Chronic Back Pain Lumbar DDD, h/o Fibromyalgia, Obesity."  (R. 282.)

Plaintiff testified her physician at the time, Lance Sweeney, had performed the trigger point assessments but she could not remember how many active trigger points she had.  (R. 77.)  She stated "I know it's in the back of my neck and my lower back, and my legs and my knees. . . . And my arms. . . . Well I have all over joint pain."  (R. 77.)  She testified that Dr. Brenneman (Douglas Brenneman, D.O.) was treating her for the condition and that he was treating her with ibuprofen because she does not have insurance to cover other medicine offered.  (R. 77-78.)

Defendant merely mentions the impairment and associates it with the chronic pain/joint pain discussed by the ALJ. (*See* Doc. 12 at 9; Doc. 17 at 2-3.)

The ALJ found Plaintiff to have the severe impairment of "chronic pain disorder" and noted that Plaintiff testified that "she has constant joint and back pain." (R. 54.) No specific citations accompany these statements.

### 3. Degenerative Spine Disease

Plaintiff identifies degenerative spine disease as an additional physical impairment. (Doc. 11 at 4.) On April 29, 2008, Plaintiff was seen at the York Hospital Orthopedic Clinic for left hip and groin pain. (R. 247.) Plaintiff reported she had problems with her back in the past for which she received physical therapy. (*Id.*) Objectively, Plaintiff was found to be

> a pleasant 36-year-old female, no acute distress, sitting comfortably in a chair. Abdomen - she is obese. Musculoskeletal - she has full range of motion with flexion and extension as well as internal and external rotation in the hip. She has no tenderness with palpation over the groin or any specific area over the hip. Trochanteric bursa is not painful. She has no deformities noted.
>
> Hip x-ray shows no acute pathology and review of the spinal x-ray from September shows she does have some degenerative joint disease in the spine.

(R. 247.) The Assessment states that the left hip and groin pain was likely referred pain from some degenerative changes in her back. (*Id.*) The "plan" for treatment included consultation with a

physical therapist for strengthening exercises and referral to the pain clinic for consideration for epidural injections into the back to help improve the pain. (*Id.*)

Plaintiff visited the Orthopedic Clinic again on May 22, 2008, after she had an MRI examination of her lumbar spine. (R. 243.) Plaintiff's chief complaints were low back and left hip pain. (*Id.*) Objective findings reported that

> [t]he patient is an obese 36-year-old female who is in no apparent distress. She has tenderness to palpation over her left lumbar spine. She has equivocal straight-leg-raise signs bilateral lower extremities. She has 5/5 muscle strength with dorsiflexion, plantar flexion, great toe extension, knee flexion and knee extension, hip flexion and bilateral lower extremities. Sensation is slightly decreased over her L5 dermatone on the left. The remainder of her sensory exam to light touch is within normal limits.

(R. 243.) Under the heading "Diagnostic Studies," the report indicates that

> X-rays of her thoracolumbar spine were reviewed. She has a mild levoscoliosis with apex at the L2 to the left. She has some degenerative changes throughout her thoracolumbar spine. There does not appear to be any evidence of a spondylosis or spondylolisthesis at this time, however, these are supine films and not standing.
>
> MRI of her lumbar spine was also reviewed. She has diffuse degenerative changes throughout with some facet hypertrophy at the levels of L4-5 and L5-S1. She has broad-based disk bulge on the left at L2-3 as well as a bulge on the left of the L3-4 and L4-5. She does have some L4-5 foraminal stenosis on the left as well.

9

(R. 243.)  The "Assessment" states "[d]egenerative disk disease of lumbar spine with degenerative joint disease of the facets throughout her lumbar spine."  (*Id.*)  The "Plan" consists of the following:

1. At this time, the patient was given a prescription for a Medrol Dosepak and Valium 5 mg to use as a muscle relaxer. She was also given a prescription for tramadol.

2. She is already scheduled for epidural injections for her lumbar spine on July 2, 2008.  She should follow up with orthopedic clinic after her epidural steroid injections.

3. If she fails to have any relief, she should have standing flexion-extension films of her lumbar spine to see if shes has any sort of instability.

4. The patient also may benefit from a diskogram.

5. The patient was also instructed that she should mention to her family doctor about the swelling in her left lower quadrant area and she was told that this is most likely not related to her back or hip area.

6. She should also consider being followed up by her general surgeon and/or her obstetrics/gynecologist to be evaluated for possible hernia, possible absess as I do not know what else this could be.

(R. 244.)

On January 4, 2010, Douglas Brenneman, D.O., reported that Plaintiff's extremities were within normal range of motion with no edema.  (R. 381.)

**4.  Mental Impairment**

In support of her mental impairment, Plaintiff points to

evidence of record which supports a finding that her mental impairment is severe. (Doc. 11 at 8 (citing R. 76, 188, 208, 212, 261, 264, 274, 284-85, 363, 365, 381-82).)

At the time of the ALJ hearing, January 2010, Plaintiff was taking forty milligrams of Prozac daily for depression and melatonin to help her sleep. (R. 76.) She was taking Fluoxetine for depression when a Disability Report was completed in August 2008. (R. 188.) In a Function Report completed on September 1, 2008, Plaintiff indicated she had been taking the Fluoxetine since 2006. (R. 208.) Plaintiff reported depression and sleep disturbance as well as taking Fluoxetine in the patient history completed on September 3, 2008, in the office of Diana Wallace, M.D. (R. 264.) At her consultative appointment with Thomas Celello, M.D., on November 7, 2008, Plaintiff was noted to experience anxiety and depression which was treated with 40 milligrams of Fluoxetine daily and Diazepam, 5 milligrams every six hours as needed. (R. 274.) In the course of a clinical psychological examination and review of documents performed by Anthony J. Fischetto, Ed. D., on December 22, 2008, comments include the observation that Plaintiff drove to the appointment accompanied by a neighbor and she was able to smile and joke around. (R. 284.) Plaintiff reported that "she gets depressed a little bit from the physical conditions, gets angry at times," she had no psychiatric hospitalizations, she had been on Prozac for the

last three years which "helps a little bit," and she was getting counseling on a Christian counseling center. (*Id.*) Dr. Fischetto reported that when Plaintiff was asked "why she cannot work now, she said because of her pain in the left side and not because of any psychiatric or psychological problems." (R. 285.) His diagnosis included "adjustment disorder with depressed mood at times due to pain," and "stress from the pain." (R. 287.) In the "Effect of Impairment on Function" portion of the Report, Dr. Fischetto found that Plaintiff was able to drive except when she had pain, she was unable to shop because of pain, she can cook once a week, and she does not keep up with housework because of pain." (R. 287.) He concluded that Plaintiff had "[a]djustment disorder with depressed mood at times due to physical problems . . . with no impairment on her work, she says." (R. 288.) In January of 2010, Dr. Brenneman noted that her mood was depressed but she denied thoughts of hurting herself. (R. 381.) He assessed that she had depressive disorder, generalized anxiety disorder and insomnia. (R. 382.) The depressive disorder was to be treated with Fluoxetine and the insomnia with over-the-counter melatonin. (*Id.*)

The ALJ noted that the a State Agency psychological consultant concluded Plaintiff's mental impairment was not severe. (R. 56 (citing Ex. 9F (December 30, 2008, Psychiatric Review Technique)).) However, the ALJ found that reports dated subsequent to the December 2008 opinion "establish sufficient symptomology to make a

finding that the claimant's depression is a severe impairment. Therefore, this opinion is given little weight." (R. 56.) The ALJ does not specifically cite to the reports upon which he relies.

**5.   Other Evidence**

Plaintiff points to evidence showing that she had a roommate that helped her during the year before her hearing, received help from her neighbor, and had to lie down repeatedly to relieve pain after doing any activities. (Doc. 11 (citing R. 70-72, 232-33, 239).)

## II.   Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[4] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a

---

[4] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

The instant decision was initially decided at the fourth step of the process. (R. 56.) The ALJ found Plaintiff could perform her past relevant work as a receptionist. (*Id.*)

In the alternative, the ALJ, "assuming the claimant was not capable of performing any past work," proceeded to the fifth step. (R. 56.) At the fifth step, the ALJ also determined that Plaintiff had not been under a disability during the relevant time period-- December 1, 2005, through the date of the decision, February 19,

2010.  (R. 56-58.)

In his decision issued on February 19, 2010, the ALJ
identified the following specific findings of fact and conclusions
of law:

1.    The claimant meets the insured status
      requirements of the Social Security Act
      through September 20, 2009.

2.    The claimant has not engaged in
      substantial gainful activity since
      December 1, 2005, the alleged onset date
      (20 CFR 404.1571 *et seq.*, and 416.971 *et*
      *seq.*).

3.    The claimant has the following severe
      impairments: chronic pain disorder and a
      history of abdominal surgeries times
      three (20CFR 404.1520(c) and
      416.920(c)).

4.    The claimant does not have an impairment
      or combination of impairments that meets
      or medically equals one of the listed
      impairments in 20 CFR Part 404, Subpart
      P, Appendix 1 (20 CFR 404.1520(d),
      404.1525, 404.1526, 416.920(d), 416.925
      and 416.926).

5.    After careful consideration of the
      entire record, the undersigned finds
      that the claimant has the residual
      functional capacity to perform sedentary
      work as defined in 20 CFR 404.1567(a)
      and 416.967(a) except the claimant is
      limited to standing and walking no more
      than 15 minutes at a time and for 2
      hours in an 8-hour workday, and needs to
      alternate positions at will.  In
      addition, the claimant can push and pull
      up to 5 pounds occasionally stoop,
      crouch and kneel, and should avoid
      climbing, balancing and crawling, and
      working near unprotected heights and
      vibrating objects.  The claimant should

also avoid high paced production piece
work.

6.    The claimant is capable of performing
her past relevant work as a receptionist
(20 CFR 404.1565 and 416.965).

7.    The claimant was born on July 28, 1971
and was 34 years old, which is defined
as a younger individual age 18-44, on
the alleged disability onset date (20
CFR 404.1563 and 416.963).

8.    The claimant has at least a high school
education and is able to communicate in
English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not
material to the determination of
disability because using the Medical-
Vocational Rules as a framework supports
finding that the claimant is "not
disabled," whether or not the claimant
has transferable job skills (See SSR 82-
41 and 20 CFR Part 404, Subpart P,
Appendix 2).

10.   Considering the claimant's age,
education, work experience, and residual
functional capacity, there are jobs that
exist in significant numbers in the
national economy that the claimant can
perform (20 CFR 404.1569, 404.1569(a),
416.969, and 416.969(a)).

11.   The claimant has not been under a
disability, as defined in the Social
Security Act, from December 1, 2005
through the date of this decision (20
CFR 404.1520(g) and 416.920(g)).

(R. 53-58.)

### III. Standard of Review

*A.*    *Objections to a Report and Recommendation*

When a plaintiff files objections to a magistrate judge's

report, the reviewing court conducts a *de novo* review of those portions of the report to which objection is made.  28 U.S.C. § 636(b)(1).  To warrant *de novo* review, the objections must be both timely and specific.  *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  Local Rule 72.3 of the Local Rules of Court of the Middle District of Pennsylvania requires the objecting party to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  The court may accept, reject or modify, in whole or in part, the findings made by the magistrate judge.  28 U.S.C. § 636(b)(1).  Uncontested portions of the report are reviewed for clear error.  *Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

**B.    *Review of the Commissioner's Decision***

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  A reviewing court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427

17

(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented."  *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted).  An ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

### A. General Considerations

At the outset of our review of whether the ALJ has met the substantial evidence standard regarding the matters at issue here, we note the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits.  *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  These proceedings are

not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare*, 497 F. 2d 837, 840 (3d Cir. 1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. *Dobrowolsky*, 606 F.2d at 406. Further, the court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.*

Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Dobrowolsky*, 606 F.2d at 407. In *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981), the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what

evidence was rejected. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Only where the ALJ rejects conflicting probative evidence must he fully explain his reasons for doing so. *See*, *e.g.*, *Walker v. Comm'r of Soc. Sec.*, 61 F. App'x 787, 788-89 (3d Cir. 2003) (citing *Kent v. Schweiker*, 710 F.2d110, 114 (3d Cir. 1983)). Further, the ALJ does not need to use particular language or adhere to a particular format in conducting his analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

Here, the Magistrate Judge determined the ALJ's decision is supported by substantial evidence and recommends denial of Plaintiff's appeal. (Doc. 15.) For the reasons discussed below,

we disagree with the Magistrate Judge's recommended disposition.

**B. *Plaintiff's Objections***

Plaintiff raises three objections to the Report and Recommendation: 1) the ALJ did not properly assess all medically determinable impairments shown by the record (Doc. 16 at 2); 2) the ALJ did not address relevant evidence that supported her disability claim (*id.* at 4); and 3) the ALJ did not follow the Commissioner's procedure for evaluating Plaintiff's mental impairment (*id.* at 6). We will discuss each in turn.

**1) Assessment of Medically Determinable Impairments**

Plaintiff's first objection addresses the ALJ's failure to acknowledge that she suffers from fibromyalgia and he did not include her degenerative disc disease as a medically determinable impairment. (Doc. 16 at 2.) We agree the ALJ did not properly consider all of Plaintiff's impairments.

Defendant does not assert that the ALJ directly considered fibromyalgia as a disorder or degenerative disc disease as a severe impairment. Rather, she argues that both of these conditions are pain disorders and the ALJ found that Plaintiff had chronic pain as a severe impairment. (Doc. 17 at 2-3.) Defendant also asserts that remand is not justified for evaluation of an impairment where the plaintiff fails to establish that any functional limitations precluded the performance of work which the ALJ found the plaintiff capable of performing. (Doc. 17 at 3.)

The ALJ's statement that Plaintiff has the severe impairment of chronic pain disorder is unaccompanied by any explanation. (R. 53.) Thus, the Court can only guess at what considerations went into arriving at the assessment. This is just the type of conclusory statement that is "beyond meaningful judicial review." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

This is particularly so because many courts have determined that a disability case involving a diagnosis of fibromyalgia presents a particular need for a close examination of the evidence due to the nature of the disease. *See Henderson v. Astrue*, 887 F. Supp. 2d 617, 636 (W.D. Pa. 2012) (citing *Lintz v. Astrue*, Civil Action No. 08-424, 2009 WL 1310646 (W.D. Pa. May 11, 2009)); *see also Perl v. Barnhart*, Civil Action No. 03-4580, 2005 WL 579879 (E.D. Pa. Mar. 10, 2005). Some courts have found error where the ALJ relied on the lack of objective evidence in making the determination that the claimant was not disabled. *Id.* "Symptoms associated with fibromyalgia include pain all over, fatigue, disturbed sleep, stiffness, and tenderness occurring at eleven of eighteen focal points." *Lintz*, 2009 WL 1310646, at *7 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Particularly because "fibromyalgia patients often manifest normal muscle strength and neurological reactions and have a full range of motion," *Lintz*, 2009 WL 1310646, at *7 (quoting *Rogers v. Comm'r of*

*Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (internal quotation omitted)), an ALJ must be cautions in relying on objective findings and undermining subjective ones. *Lintz*, 2009 WL 1310646, at *8-11; *Rogers*, 486 F.3d at 244-46.

Here Plaintiff has testified that she has been diagnosed with fibromyalgia, the record reveals a history of fibromyalgia, and Plaintiff's complaints include widespread pain, fatigue, and sleep problems. Given the symptoms of the disease and Plaintiff's objective complaints, "chronic pain disorder" arguably does not address the array of symptoms that may be associated with Plaintiff's fibromyalgia. Furthermore, although Defendant argues that remand for consideration of this impairment is not justified because Plaintiff failed to establish any functional limitations precluding the performance of sedentary work as described by the ALJ (Doc. 17 at 3), Plaintiff testified she had limitations which the vocational expert concluded would preclude her from working if her testimony were found credible. (R. 85.)

Similarly, identification of the specific impairments considered is important because the step two determination of whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe is based upon the limitations on an individual's ability to perform basic work activities. "Chronic pain disorder" does not identify the basis of the pain and, therefore, such a generic identification may

not accurately reflect the limitations which may be associated with a specific diagnosis/impairment.  This identification is also important because incomplete information at step two impacts the remainder of the evaluation process.  Thus, specific consideration of Plaintiff's underlying conditions (which include degenerative disc disease, fibromyalgia, and chronic abdominal pain) is preferable to consideration of "chronic pain disorder."

Because the ALJ did not properly consider all of Plaintiff's impairments and because the record contains some evidence of functional limitations which differ from those established by the ALJ, we conclude remand is necessary for further consideration consistent with this opinion.  With this conclusion, we make no determination as to whether those conditions not considered by the ALJ are "severe" either alone or in combination with other impairments.  We further note that we make no determination that the limitations suggested by Plaintiff (R. 70-74) and her treating physician (R. 226-229, R. 375-378) are accurate or attributable to the conditions not specifically considered by the ALJ.

## 2) Assessment of Evidence Supporting Disability Claim

With this objection, Plaintiff asserts that the ALJ did not acknowledge her fibromyalgia impairment, did not identify the weight he accorded her work record, misstated evidence regarding her living situation and certain activities of daily living, and did not acknowledge some objective findings related to her

abdominal pain.  (Doc. 16 at 5.)

Defendant does not dispute Plaintiff's assessment of the ALJ's consideration of the matters noted.  (Doc. 17.)  Rather, Defendant asserts it was not necessary for the ALJ to specifically acknowledge/discuss fibromyalgia, Plaintiff's work record was not such that it required consideration, and the ALJ adequately addressed Plaintiff's daily living activities.  (Doc. 17 at 3-5.)

Because we have determined remand is necessary, we need not discuss this objection in detail.  In general, a thorough examination of the record and explanation of decision should include discussion of these matters.  Of particular note is the the ALJ's assessment of Plaintiff's daily living activities/abilities. The decision states that "[t]he undersigned also notes for the record that the claimant lives alone and is generally capable of caring for herself and her dog, . . . and has not reported being dependent on others for her needs."  (R. 55.)  This assessment is not an accurate reflection of Plaintiff's hearing testimony regarding her living situation and reliance upon others.  (R. 71-73.)  Plaintiff does not live alone; she has a roommate.  (R. 72.) Plaintiff reported that her roommate washes the dishes and does the laundry when she cannot do those things.  (*Id.*)  She further reported that a neighbor comes over to take her dog out when she is not able to go down the stairs.  (*Id.*)

**3)  Evaluation of Mental Health Impairment**

With this objection, Plaintiff asserts the ALJ found she "had

25

a 'severe' mental health impairment, depression, but did not adhere to the Commissioner's procedure for evaluating it." (Doc. 16 at 6.) Because we find that remand of this case is required, and because the ALJ's consideration of Plaintiff's mental health impairment is somewhat confusing (*e.g.*, it is not listed at step two as a "severe" impairment (R. 53), but is noted to be found a severe impairment later in the ALJ's discussion of the RFC at step four (R. 54)), more thorough consideration and explanation of this issue is directed.

## V. Conclusion

For the reasons discussed above, we do not adopt the Magistrate Judge's Report and Recommendation (Doc. 15). Plaintiff's appeal of the Commissioner's denial of benefits (Doc. 1) is granted, and the case is remanded for further consideration consistent with this Memorandum. An appropriate Order is entered simultaneously with this Memorandum.


                                S/Richard P. Conaboy
                                RICHARD P. CONABOY
                                United States District Judge


DATED: May 8, 2013 _____

26